**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ACCELERANT SPECIALTY INSURANCE
COMPANY a/s/o ROBERT ULLERICH and
CEVICHE CHARTERS, LLC, as owner of the vessel,
a 2008 Grady White 306 CC with Hull
Identification Number NTLCC305F809,

      Plaintiff,

v.                              Case No. 2:25-cv-1142

INGMAN MARINE,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ACCELERANT SPECIALTY INSURANCE COMPANY a/s/o ROBERT ULLERICH and CEVICHE CHARTERS, LLC, as owner of the vessel, a 2008 Grady White 306 CC with Hull Identification Number NTLCC305F809 (hereinafter "Vessel"), by and through undersigned counsel, sues Defendant, INGMAN MARINE (hereinafter "Ingman"), and alleges as follows:

## JURISDICTION AND VENUE

1.    This is a civil action for damages in excess of $75,000, exclusive of interest and costs.

2.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §

1332(a) because there is complete diversity of citizenship between Plaintiff and

Defendant and the amount in controversy exceeds $75,000, exclusive of

interest and costs. Alternatively, this action falls within the Court's admiralty

and maritime jurisdiction under 28 U.S.C. § 1333(1) and is governed by general

maritime law because it arises out of a maritime contract for the repair,

modification, and outfitting of a vessel and related maritime torts.

3.      Plaintiff is a Georgia corporation with its principal place of

business in Sandy Springs, Georgia, authorized to transact insurance business

in the State of Florida. At all times material hereto, Plaintiff issued a policy of

insurance covering the vessel described herein. Claims arising from the loss of

the vessel have been presented to and paid by Plaintiff, which is thereby

subrogated to the rights of its insureds and brings this action in its own name

and as agent for its insureds, ROBERT ULLERICH and CEVICHE

CHARTERS, LLC (collectively the "Assured").

4.      Upon information and belief, Ingman is a corporation organized

and existing under the laws of the State of Florida, with its principal place of

business at 15001 Gasparilla Rd., Placida, FL 33946, and is therefore a citizen

of Florida for purposes of 28 U.S.C. § 1332.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because

Defendant resides in this District and is subject to this Court's personal

jurisdiction, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the State of Florida, including Defendant's negligent design and installation of the electrical system at issue.

6.     Ingman personally or through its agents or representatives operated, conducted, engaged in or carried on a business venture in the state of Florida and/or has an office or agency in this state; and/or was engaged in substantial business activity within the state of Florida; and/or committed one or more of the acts identified as giving rise to jurisdiction in Florida Statutes §§ 48.081, 48.181, or 48.193; and/or engaged in continuous and non-isolated activity within the state of Florida, including but not limited to entering into contracts, undertakings, and agreements with various third parties as part of its above described business activities which required and contemplated regular actions and activities to be performed within the state of Florida and its territorial waters of the United States and accordingly is subject to the jurisdiction of this Court.

## **PARTIES**

7.     At all relevant times, Plaintiff was and is an insurance company duly authorized to do business and to issue marine insurance policies.

8.     At all relevant times, Plaintiff insured a recreational vessel owned by its insured, ROBERT ULLERICH and CEVICHE CHARTERS, LLC, under

a policy of marine insurance that provided coverage for, among other things, physical loss or damage to the Subject Vessel.

9.    Upon information and belief, Ingman is engaged in the business of selling, rigging, repairing, and servicing vessels and marine equipment, including the installation and modification of marine electrical systems.

## GENERAL ALLEGATIONS

10.    On or about January 13, 2023, Assured purchased the Subject Vessel. Prior to that purchase, Ingman performed aftermarket work on the Subject Vessel, including the design and installation of electric downrigger/reel outlets and associated 12-volt DC wiring (the "Downrigger Electrical System").

11.    Based on maintenance records, the electric downrigger/reel outlets located at the port and starboard sides of the Subject Vessel were aftermarket installations performed by Ingman prior to Assured's purchase of the Subject Vessel.

12.    In performing the aftermarket work on the Subject Vessel, Ingman assumed control and custody of the vessel and undertook to design, install, and configure the Downrigger Electrical System, including the conductors, circuit protection, and all associated wiring, breakers, and switches.

13.    As a professional marine service provider, Ingman was required to perform its work in a reasonably safe and workmanlike manner and in accordance with applicable marine industry standards, including but not

4

limited to American Boat and Yacht Council ("ABYC") standards governing DC electrical systems on seagoing vessels.

14.     On or about mid-October 2023, the Assured delivered the Subject Vessel to Palmetto Boat Sales ("Palmetto") in Charleston, South Carolina, for repairs. Palmetto hauled the Subject Vessel and stored it on its trailer at Palmetto's yard located at 1634 Savannah Highway, Charleston, South Carolina 29407.

15.     On December 8, 2023, while the Subject Vessel was hauled out and stowed on its trailer in Palmetto's yard, a fire broke out on board the Subject Vessel (the "Fire"), resulting in severe and ultimately total destruction of the vessel.

16.     On December 9, 2023, the Assured was notified that his vessel had been destroyed by the Fire.

17.     On or about February 9, 2024, a joint inspection of the fire-damaged Subject Vessel was conducted at Palmetto's facility (the "Joint Inspection").

18.     During the Joint Inspection, the electrical and mechanical systems of the port aft section of the Subject Vessel were examined. Signs of electrical arcing were observed on wiring believed to power the 12-volt DC electric downrigger/reel outlets at the port and starboard sides.

19.    The damaged wiring associated with the Downrigger Electrical System was traced and found to run from the battery switch to a circuit breaker located on the transom.

20.    All of the electrical fire damage was concentrated under the port aft deck near the dual battery switches. This area was identified as the origin point of the Fire, and the damaged wiring associated with the Downrigger Electrical System was determined to be the only ignition source present in that area.

21.    Critically, there was no overcurrent protection on the conductor supplying the Downrigger Electrical System at or near its connection to the source of power. Without overcurrent protection, an uncontrolled electrical event was able to occur, causing overheating, arcing, and ignition of surrounding materials.

22.    The investigation concluded that the Downrigger Electrical System installed by Defendant Ingman was deficient and non-compliant in that the overcurrent protection—i.e., the circuit breaker—was located approximately fifty-one and one-half inches (51-1/2") away from the source of power, rather than within seven inches (7") of the power source as required by applicable industry standards.

23.    ABYC Standard E-11, including Section 11.10.1.1.1, requires that overcurrent protection for DC conductors be located within seven inches (7") of

6

the point at which the conductor is connected to the source of power. Locating the circuit breaker more than four feet from the power source violated this standard and created an unreasonable and foreseeable risk of fire.

24.     By designing and/or installing the Downrigger Electrical System with conductors connected directly to the battery switch without proper overcurrent protection at the source of power, Ingman created a dangerous and defective electrical condition on the Subject Vessel that was latent and unknown to the Assured.

25.     As a direct and proximate result of the defective and non-compliant electrical installation performed by Ingman, the Subject Vessel experienced an uncontrolled electrical event under the port aft deck near the dual battery switches, which ignited and caused the Fire on December 8, 2023.

26.     The Fire rendered the Subject Vessel a constructive total loss.

27.     Pursuant to its obligations under the marine insurance policy, Plaintiff paid the Assured a total of $179,750.00 for the loss of the Subject Vessel, subject to a policy deductible of $3,000.00.

28.     By virtue of these payments, Plaintiff is subrogated to all rights, claims, and causes of action that the Assured has or may have against Ingman, to the extent of Plaintiff's payment and any amounts owed to the Assured.

29.    Plaintiff has become subrogated to the Assured rights and interest to claim against third parties responsible for the damages to the subject vessel and related expenses, up to the amount paid under the policy.

30.    Plaintiff has retained the undersigned law firm of Horr, Skipp & Perez, P.A. to prosecute this action.

31.    Plaintiff has performed and satisfied all conditions precedent for maintenance of this action, or all such conditions have occurred.

## COUNT I – GENERAL NEGLIGENCE

32.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

33.    Ingman owed a duty to exercise reasonable care in the design, installation, and modification of the Subject Vessel's electrical systems, including the Downrigger Electrical System.

34.    Ingman knew or, in the exercise of reasonable care, should have known that improperly protected DC conductors and non-compliant circuit protection on a vessel pose a serious and foreseeable risk of overheating, arcing, and fire.

35.    Ingman breached its duty of care in one or more of the following ways, including:

   a. Designing and/or installing the Downrigger Electrical System without providing overcurrent protection at or within seven

inches (7") of the point where the conductor was connected to the power source;

b.  Placing the circuit breaker approximately fifty-one and one-half inches (51-1/2") away from the source of power in violation of ABYC Standard E-11.10.1.1.1 and other accepted marine electrical standards;

c.  Failing to properly route, size, or protect conductors to minimize heat buildup, short-circuit risk, and electrical arcing;

d.  Failing to warn the then-owner, subsequent owners, and/or users of the Subject Vessel—including the Assured—of the defective and non-compliant nature of the Downrigger Electrical System;

e.  Failing to perform adequate testing, inspection, and verification of the electrical work after installation to ensure compliance with applicable standards and safe operation; and

f.  Otherwise failing to act as a reasonably prudent marine service provider under the same or similar circumstances.

36.  The dangerous condition created by Ingman's negligent acts and omissions was latent and not reasonably discoverable by the Assured.

37.  As a direct and proximate result of Ingman's negligence, an uncontrolled electrical event occurred in the Downrigger Electrical System, which caused the Fire aboard the Subject Vessel on December 8, 2023, and resulted in the total loss of the vessel.

38.  Plaintiff, as subrogee of the Assured, has suffered damages in at least the amount of $179,750.00, plus the deductible and any other recoverable damages, together with interest and costs.

**WHEREFORE,** Plaintiff demands judgment against Defendant Ingman on Count I for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT II – NEGLIGENT FAILURE TO WARN/INSTRUCT

39.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

40.    At all relevant times, Ingman knew or, in the exercise of reasonable care, should have known that the Downrigger Electrical System it designed and installed on the Subject Vessel:

  a.  Contained DC conductors connected to the battery switch without overcurrent protection located within seven inches (7") of the source of power;

  b.  Deviated from ABYC Standard E-11 and other accepted marine electrical safety standards; and

  c.  Created an unreasonable and latent risk of overheating, arcing, and fire during ordinary use, lay-up, storage, and repair of the Subject Vessel.

41.    As a professional marine service provider, Ingman owed a duty to exercise reasonable care to warn and instruct:

  a.  The then-owner of the Subject Vessel;

  b.  Foreseeable subsequent owners and users of the Subject Vessel, including the Assured; and

    c. Any dealers or intermediaries through whom the vessel would be sold, regarding any non-obvious, latent, or concealed dangers associated with the Downrigger Electrical System and its non-compliant configuration.

42. Ingman's duty to warn and instruct included, without limitation, the duty to:

    a. Disclose that the Downrigger Electrical System lacked proper overcurrent protection at the source of power and was not ABYC compliant;

    b. Advise that continued use of the system in that condition created a substantial risk of fire;

    c. Provide adequate written and/or verbal warnings, labels, and instructions regarding safe operation, de-energizing procedures, and any limitations on use of the system;

    d. Recommend that appropriate corrective measures be taken—such as relocating or adding circuit protection in compliance with ABYC standards—before ordinary use or unattended storage of the Subject Vessel; and

    e. Otherwise communicate sufficient information so that a reasonable owner or user could appreciate the risk and take steps to avoid or mitigate it.

43. Ingman breached its duty to warn and instruct by, among other things:

    a. Failing to disclose to the then-owner, dealer, or any subsequent owner that the Downrigger Electrical System was installed with overcurrent protection located approximately fifty-one and one-half inches (51-1/2") from the source of power, in violation of ABYC requirements;

11

     b.   Failing to provide any warnings—written, verbal, or in the vessel documentation—that the configuration of the Downrigger Electrical System created a heightened risk of fire;

     c.   Failing to place conspicuous warnings or labels at or near the battery switches, circuit breaker, or downrigger outlets regarding the hazard;

     d.   Failing to provide instructions or recommendations regarding inspection, modification, or de-energizing of the Downrigger Electrical System during lay-up, storage, or repair; and

     e.   Otherwise failing to communicate information that a reasonably prudent marine service provider would have communicated under the same or similar circumstances.

44.   The hazardous condition created by Ingman's installation was latent, hidden beneath the aft deck, and not reasonably discoverable by the Assured through ordinary observation or use.

45.   Had adequate warnings and instructions been provided, the Assured or others acting on his behalf would have:

     a.   requested corrective work to bring the Downrigger Electrical System into compliance with ABYC; or

     b.   taken other reasonable steps to avoid or mitigate the risk of fire.

46.   As a direct and proximate result of Ingman's negligent failure to warn and instruct, the dangerous condition persisted, an uncontrolled electrical event occurred in the Downrigger Electrical System on December 8, 2023, and the Fire destroyed the Subject Vessel.

47.    Plaintiff, as subrogee of the Assured, has suffered damages in at least the amount of $179,750.00, plus the deductible and any other recoverable damages, together with interest and costs.

**WHEREFORE,** Plaintiff demands judgment against Ingman on Count II for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT III – NEGLIGENT REPAIR AND/OR MAINTENANCE

48.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

49.    Ingman undertook, for consideration, to provide professional marine services, including the design and installation of the Downrigger Electrical System on the Subject Vessel.

50.    In undertaking this work, Ingman owed a duty to perform all services in a safe, competent, and workmanlike manner, consistent with the skill and care ordinarily exercised by reasonably prudent marine service providers and in accordance with applicable industry standards, including ABYC standards.

51.    Ingman breached its duty to perform its work in a workmanlike manner by, among other things:

a. Installing the Downrigger Electrical System with conductors connected directly to the battery switch without proper overcurrent protection located within seven inches (7") of the source of power;

b. Placing the circuit breaker for the Downrigger Electrical System approximately fifty-one and one-half inches (51-1/2") from the power source, contrary to ABYC requirements and accepted practice;

c. Failing to ensure that the electrical components, configuration, and routing minimized the risk of short circuits, overheating, and arcing;

d. Failing to verify, test, and confirm the safety and compliance of the Downrigger Electrical System after installation; and

e. Otherwise performing the work in an unsafe, unreasonably dangerous, and unworkmanlike manner.

52. The unworkmanlike electrical installation performed by Ingman directly and proximately caused the uncontrolled electrical event and Fire that destroyed the Subject Vessel.

53. As a result of Defendant Ingman's negligent workmanship, Plaintiff has sustained damages as set forth above.

**WHEREFORE,** Plaintiff demands judgment against Ingman on Count III for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT

54. Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

55. Prior to January 13, 2023, Ingman entered into a contract—written, oral, and/or implied in fact—with the then-owner of the Subject Vessel (and/or with a dealer or intermediary acting on behalf of current and future owners) to perform aftermarket installation of the Downrigger Electrical System on the Subject Vessel (the "Installation Contract").

56. Upon information and belief, under the Installation Contract, Ingman agreed, for good and valuable consideration, to perform the electrical installation in a good, safe, and workmanlike manner consistent with applicable industry standards, including ABYC standards, and suitable for the ordinary and foreseeable use of the Subject Vessel by current and subsequent owners such as the Assured.

57. The Assured, as a subsequent purchaser and intended user of the Subject Vessel, was an intended third-party beneficiary of the Installation Contract, or, alternatively, any rights under the Installation Contract relevant to the safe condition of the Subject Vessel were assigned and transferred with the sale of the vessel to the Assured.

58. Ingman materially breached the Installation Contract by failing to perform the work in accordance with applicable standards and by installing a

Downrigger Electrical System that was defective, non-compliant, and unreasonably dangerous, including by:

    a.  Failing to provide overcurrent protection within seven inches (7") of the conductor's connection to the source of power;

    b.  Installing a circuit breaker approximately fifty-one and one-half inches (51-1/2") from the source of power;

    c.  Failing to ensure the electrical work was safe and suitable for ordinary use of the Subject Vessel; and

    d.  Failing to warn of or correct the dangerous and non-compliant condition created by its installation.

59.    Ingman's breaches of the Installation Contract directly and proximately resulted in the electrical failure and Fire that destroyed the Subject Vessel.

60.    As a consequence of these breaches, Plaintiff, as subrogee of the Assured, has suffered damages in at least the amount of $179,750.00, plus the deductible and any other recoverable damages, together with interest and costs.

**WHEREFORE,** Plaintiff demands judgment against Ingman on Count IV for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

Case No. 2:25-cv-1142

## COUNT V – BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE

61.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

62.    As alleged above, prior to January 13, 2023, Ingman entered into the Installation Contract to perform aftermarket electrical work on the Subject Vessel, including the design and installation of the Downrigger Electrical System.

63.    By undertaking to provide professional marine services and to modify the Subject Vessel's electrical systems, Ingman impliedly warranted that its work would be performed in a safe, competent, and workmanlike manner, consistent with:

> a.    The skill and care ordinarily exercised by reasonably prudent marine service providers; and
>
> b.    Applicable marine industry standards, including ABYC standards governing DC electrical systems.

64.    The Assured, as a subsequent purchaser and intended user of the Subject Vessel, was an intended beneficiary of Ingman's implied warranty of workmanlike performance, or, alternatively, the benefit of such warranty ran with the vessel and inured to the Assured upon his purchase of the Subject Vessel.

17

65.    Ingman breached the implied warranty of workmanlike performance by, among other things:

    a.  Installing the Downrigger Electrical System with conductors connected to the battery switch without overcurrent protection located within seven inches (7") of the source of power;

    b.  Locating the circuit breaker approximately fifty-one and one-half inches (51-1/2") from the power source, contrary to ABYC Standard E-11.10.1.1.1 and accepted marine electrical practice;

    c.  Configuring the system in a manner that allowed an uncontrolled electrical event to occur during ordinary and foreseeable conditions of storage and repair;

    d.  Failing to verify, test, and confirm that the installation complied with applicable industry standards and was reasonably safe for ordinary use; and

    e.  Returning the Subject Vessel to service with a dangerously defective and non-compliant electrical system that was unfit for its ordinary purpose.

66.    As a result of these breaches of the implied warranty of workmanlike performance, the Downrigger Electrical System was not reasonably safe, was not fit for its intended and ordinary marine use, and rendered the Subject Vessel susceptible to electrical failure and fire.

67.    Ingman's breach of the implied warranty of workmanlike performance directly and proximately caused the electrical failure and Fire on December 8, 2023, which destroyed the Subject Vessel.

68.    As a consequence of these breaches, Plaintiff, as subrogee of the Assured, has suffered damages in at least the amount of $179,750.00, plus the

deductible and any other recoverable damages, together with interest and costs.

**WHEREFORE,** Plaintiff demands judgment against Ingman on Count V for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

## COUNT VI – BREACH OF BAILMENT

69.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 as if fully set forth herein.

70.    When the Subject Vessel was delivered to Ingman for the aftermarket installation of the Downrigger Electrical System, Ingman accepted possession, custody, and control of the vessel and its systems for the limited purpose of performing the work (the "Bailment").

71.    The Bailment was for the mutual benefit of the parties, and Ingman, as bailee, owed a duty to exercise ordinary care in safeguarding the Subject Vessel and to redeliver it in substantially the same safe and operable condition in which it was received, ordinary wear and tear excepted.

72.    Ingman breached its duties as bailee by returning the Subject Vessel with a latent and unreasonably dangerous defect in its electrical system—namely, the improperly protected and non-compliant Downrigger

Electrical System—which significantly increased the risk of fire even during ordinary and foreseeable use and storage of the vessel.

73.    The dangerous condition created by Ingman's acts and omissions during the Bailment directly and proximately caused the electrical failure and Fire that destroyed the Subject Vessel on December 8, 2023.

74.    Ingman's failure to redeliver the Subject Vessel in a reasonably safe condition constituted a breach of the Bailment, and Ingman is liable for the resulting loss and damages.

75.    As a direct and proximate result of Ingman's breach of bailment, Plaintiff has sustained damages as set forth herein.

**WHEREFORE,** Plaintiff demands judgment against Ingman on Count VI for all damages recoverable at law, together with pre- and post-judgment interest, costs of this action, and such other and further relief as the Court deems just and proper.

Dated: December 8, 2025.

Respectfully submitted,

*/s/ Henry A. Yaniz*
**JUAN C. PEREZ, JR.**
Florida Bar No. 91581
jperez@admiral-law.com
**HENRY A. YANIZ**
Florida Bar No. 1049169
hyaniz@admiral-law.com
**HORR, SKIPP & PEREZ, P.A.**
Two Datran Center, Suite 1700

Case No. 2:25-cv-1142

9130 S. Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
***Attorneys for Plaintiff***